UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____
:
THE CHARTER OAK FIRE INSURANCE : CIVIL ACTION
COMPANY, as Subrogee of :
BRAYMAN CONSTRUCTION CORPORATION, :
   Plaintiff, :
  v. : NO. 19-0471
:
ALFRED BENESCH & COMPANY, :
   Defendant/Third Party Plaintiff, :
:
  v. :
:
TRUMBULL CORPORATION, :
   Third-Party Defendant. :
_____:

Henry S. Perkin, M.J.                   March 31, 2020

**MEMORANDUM**

   Before the Court is the Motion to Dismiss the Third-Party Complaint filed by Trumbull Corporation. For the reasons that follow, the motion will be granted in part and denied in part.

**I.  FACTS**

   This case arises out of a Project to perform various repairs and modifications to bridge RV-24.81 (the "Bridge") owned by Norfolk Southern Railway Company ("the Railway") over the Swabia Creek in Lehigh County, Pennsylvania (the "Project"). Defendant Alfred Benesch & Company ("Benesch") provided engineering design services for the Project involving preparation of certain plans for repairs and modifications to the Bridge in accordance with an agreement between Benesch and the Railway dated September 6, 2011. On or about May 23, 2016, Trumbull Corporation ("Trumbull") was retained by the Railway as the contractor to perform work for the portion of

the Project involving elimination of the Bridge's center pier, construction of new abutments to micropile foundations and erection of new double-track ballasted deck span to replace the existing open deck double-span Bridge.

On or about December 12, 2016, Trumbull retained Brayman Construction Corporation ("Brayman") as a subcontractor to install 42 micropiles at the east and west abutments of the Bridge. Brayman used a drill rig to accomplish this work. During the work involving installation of the micropiles and on or about August 14, 2017, Trumbull suggested using a bypass pumping system to divert water flow around the Project site (to replace the existing barrier cofferdam water diversion system) and asked the Railway to consult with Benesch regarding that suggestion. Trumbull notified the Railway that an expedited review and response from Benesch was necessary to allow Brayman to continue installation of the micropiles and to keep the Project on schedule. Based on Trumbull's request, the Railway consulted with Benesch regarding the design of a bypass pumping system. Benesch notified Trumbull in writing that a bypass pumping system at the Project site would need to be continuously monitored "24/7," and that a contingency plan would need to be in place in the event of a heavy storm.

Based upon the request of the Railway and Trumbull, Benesch prepared revised plans replacing the existing water diversion system with a bypass pumping system to divert water flow around the Project site, which required the use of three 10-inch diesel pumps with one back-up pump. Those revised plans were discussed with, submitted to and reviewed by the Pennsylvania Department of Environmental Protection ("DEP"), and on August 17, 2017, DEP approved the plans.

On or about August 22, 2017, the Project site experienced rain and thunderstorms in the evening, which resulted in the Project site becoming flooded and a drill rig owned by Brayman was submerged. At the time of the initial flooding event that occurred on August 22, 2017, it appeared that Trumbull had placed less than the three 10-inch diversion pumps and one 10-inch diversion back-up pump required by Benesch's design, and failed to monitor the pumping operation and inspect the pump(s) on site; thus, it was not discovered that the one pump in operation had become blocked by a sandbag. Following that initial flooding, Trumbull attempted to dewater the Project site but failed to monitor a dewatering pump and discover that the output line of that pump became dislodged from the pump. Consequently, Brayman's drill rig was allegedly submerged one or two more times prior to August 24, 2017. Charter Oak paid its subrogee Brayman $290,980.00 under a general liability policy for damage to Brayman's drill rig.

## II. PROCEDURAL HISTORY

On or about December 10, 2018, Charter Oak, Brayman's subrogor, initiated this action against Benesch by filing a Complaint in the Court of Common Pleas for Lehigh County alleging that Benesch was negligent with respect to its engineering design services for repairs and modifications to the Bridge and the dewatering system in place when the flooding event(s) occurred. *See* Compl., §§ 27-29. Benesch timely filed a Notice of Removal on February 1, 2019 pursuant to 28 U.S.C. § 1332, 1441 and 1446 to remove the action to the United States District Court for the Eastern District of Pennsylvania. Benesch filed an Answer with Affirmative Defenses to Plaintiff's Complaint on February 15, 2019, denying liability for Brayman's alleged damages

3

arising out of the flooding event(s). *See* Benesch's Ans. with Affirmative Defenses, §§ 18-26 and 27-29.

On May 2, 2019, the parties consented and the Honorable Joseph F. Leeson, Jr., approved the consent and Ordered the case transferred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c). *See* ECF No. 17, 18. On May 20, 2019, the parties stipulated and I approved the stipulation to dismiss gross negligence and recklessness claims in paragraph 29 of the Complaint and claims for economic loss damages in paragraph 30 of the Complaint, specifically "lost shift time, labor to remove the drill rig from the project site and new drill rig mobilization costs." *Id.* at No. 23. On May 20, 2019, the parties' stipulation for Benesh to file a Third Party Complaint against Trumbull Corporation the Court was also approved by Order. *Id.* at No. 24.

Benesch filed a Third-Party Complaint against Trumbull on June 3, 2019, alleging that, to the extent Plaintiff sustained loss and/or damages as alleged in the Complaint, those losses and/or damages resulted from Trumbull's negligence, carelessness or other alleged acts or failures to act of its duties in the installation and maintenance of the dewatering plan. *Id.* at No. 27. Specifically, Benesch alleges that Trumbull: failed to properly implement Benesch's design; failed to properly monitor the pumping operation; failed to inspect the pumps on site; failed to discover that a pump in operation had become blocked and was operating without a strainer on its intake hose; failed to monitor a dewatering pump and discover that the output line of that pump had become dislodged from the pump; and failed to implement a contingency plan for storm activity. *See* Third-Party Compl., at ¶¶ 34 and 35. Through the Third Party action, Benesch seeks

indemnification from Trumbull or, in the alternative, contribution as a joint tortfeasor on the negligence claims asserted by Charter Oak against Benesch. *Id.* at ¶ 37.

On August 5, 2019, Trumbull filed a Motion to Dismiss the Third-Party Complaint pursuant to F.R.C.P. 12(b)(6). *See* ECF No. 31. The motion asserts two bases for relief: Trumbull has neither a contractual nor common law obligation to indemnify Benesch; and Benesch's contribution claim is barred by the gist of the action doctrine. *Id.* Trumbull first argues that Benesch has no valid claim for contractual indemnity against Trumbull because no contract exists between Benesch and Trumbull. Trumbull also argues that Benesch cannot assert a claim for contribution (which Benesch asserted in the alternative) because Benesch's claims relative to Trumbull's duty are contractual in nature and barred by the "gist of the action" doctrine. *See* Mem. Law. Thus, Trumbull argues that the existence, or lack thereof, of a contract between the parties prevents it from being liable through either indemnification and/or contribution. Trumbull also argues that any common law indemnity claim should be dismissed based on Benesch's failure to plead a "special relationship" between Trumbull and Benesch. *See* Mot., Mem. of Law, pp. 7-8.

Benesch responds by first stating that it seeks indemnity under common law, not contract. *See* ECF No. 32. Next, Benesch contends that it properly pled in the alternative its claims for indemnification and contribution, Trumbull had sufficient notice of the claims as required by the Federal Rules of Civil Procedure, and Benesch's allegations of negligence against Trumbull do not arise from any contractual duty. Rather, Benesch alleges that Trumbull negligently performed the work of constructing Benesch's design, that Benesch's allegations against Trumbull properly mirror Charter Oak's negligence

5

allegations against Benesch, and that Benesch correctly alleges that Trumbull is properly joined as a joint tortfeasor.

### III. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 268, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

### IV. DISCUSSION

This Court has supplemental jurisdiction over Benesch's asserted third party claims because those claims form part of the same case or controversy as Charter Oak's claims against Benesch. 28 U.S.C. § 1367(a).

### A. Whether Trumbull Has a Contractual or Common Law Obligation to Indemnify Benesch.

Because no express contract exists between Trumbull and Benesch, there is no contractual indemnification available to Benesch from Trumbull. Thus, any claim for contractual indemnification in the Third Party Complaint will be dismissed.

In Count I of the Third Party Complaint, Benesch asserts a claim for common law indemnity against Trumbull. Trumbull contends Benesch fails to allege the existence of a "special relationship" between Trumbull and Benesch enabling Benesch to prevail on a claim of common-law indemnity, citing *Developers Sur. & Indem. Co. v. Mathias*, No. 1:12-CV-2216, 2013 WL 6504751 (M.D. Pa. Dec. 11, 2013), in which the court held that a conclusory allegation that a defendant was obligated under common law indemnification principles to indemnify a plaintiff was insufficient and prevented the indemnification claim from surviving a motion to dismiss without allegations supporting the existence of a special relationship giving rise to a right of indemnification). The *Developers Surety* court explained that common law indemnification:

> is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. [*Builders Supply Co. v McCabe*, 77 A.2d 368, 370 (Pa. 1951).] "[S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, [1] being based upon some legal obligation between the parties, or [2] arising from some positive rule of statutory or common law or [3] because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Id.* at 371. Accordingly, a common law right of indemnification only exists when there is a special relationship between the two responsible parties, such as employer and employee, principal and agent, or general contractor and subcontractor. *See id.* at 370; *Amco Ins. Co. v. Varish Constr., Inc.,* Civil A. No. 1:09-CV-1813, 2010 WL 3239395, at *5 (M.D.Pa. July 15, 2010).
> In *Amco,* an insurance company, as subrogee of a hotel, brought a claim against the general contractor of the hotel after ruptured sprinkler

7

> pipes caused damage to the hotel. *Amco,* 2010 WL 3239395, at *1. The general contractor filed a third-party complaint, asserting a claim for indemnification against its subcontractor. *Id.* The general contractor alleged that it had relied on the subcontractor to properly install the alarm system, and that the subcontractor's deficient installation rendered the subcontractor primarily liable for damages resulting from the pipe rupture. *Id.* at *5. The general contractor's liability was thus based on a failure to discover and correct the defect caused by the subcontractor. The court denied the motion to dismiss in *Amco* because the general contractor had properly pleaded factual allegations [which] established a primary-secondary liability relationship between the parties. *Id.; see also Waynesborough,* 2008 WL 687485, at *5–6.

*Developers Sur. & Indem. Co. v. Mathias*, No. 1:12-CV-2216, 2013 WL 6504751, at *6–7 (M.D. Pa. Dec. 11, 2013).

In response to the instant Motion to Dismiss, Benesch contends that the unopposed assertions in the pleadings show that a relationship of reliance existed among the members of the Project team with Benesch as designer to provide appropriate design documents and Trumbull as contractor to complete its work pursuant to the design documents, and each party relied upon the other to perform its job to complete the Project. Benesch argues that Trumbull's argument that it did not have a special relationship with Trumbull is premature since discovery has not been completed and the nature of the parties' relationship and the nature of the legal obligation, if any, between the parties has not been established.

Under the pleading regime established by *Iqbal,* further described by the Third Circuit as a three-step approach in reviewing the sufficiency of a complaint, this Court must first "take note of the elements the plaintiff must plead to state a claim." *See Iqbal, 556 U.S. 662, 675; Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 787 (3d Cir. 2016). Second, the Court should identify allegations that, ''because they are no more than conclusions, are not entitled to the assumption of truth.'' *Id.* at 679; *Connelly*, 809 F.3d at

787.  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679; *Connelly*, 809 F.3d at 787.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; Connelly,* 809 F.3d at 787. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.; Connelly,* 809 F.3d at 787.

In this case, Benesch brings a negligence claim against Trumbull, therefore the traditional concepts of duty, breach, causation and damages must be examined.  In the Third Party Complaint, Benesch alleges that Trumbull breached its duty of care by negligently performing the installation, maintenance and monitoring of the dewatering plan because it: failed to properly implement Benesch's design; failed to properly monitor the pumping operation; failed to inspect the pumps on site; failed to discover that a pump in operation had become blocked and was operating without a strainer on its intake hose; failed to monitor a dewatering pump and discover that the output line of that pump had become dislodged from the pump; and failed to implement a contingency plan for storm activity. *See* Third-Party Compl., at ¶¶ 34 and 35.

In the Third Party Complaint, Benesch alleges that Trumbull suggested using a bypass pumping system to divert water flow around the Project site to replace the existing barrier cofferdam water diversion system and an expedited review and response was needed from Benesch to keep the Project on schedule.  Third Party Compl., ¶¶ 15, 16. Benesch notified Trumbull in writing that such bypass pumping system would need to be

continuously monitored "24/7" and a contingency plan would be needed in the event of a heavy storm and based, in part, on Trumbull's request, Benesch prepared revised plans replacing the existing water diversion system with a bypass pumping system requiring three 10-inch diesel pumps with one 10-inch back-up pump. *Id.* at ¶¶ 18, 19. When a heavy storm occurred on August 17, 2017, Trumbull had placed less than the three required pumps and back-up pump as required by Benesch's design and failed to monitor and inspect the pumping operation. *Id.* at ¶¶ 22, 23.

Reviewing the sufficiency of the above allegations in the Third Party Complaint, Benesch has properly pled that its liability in negligence, if any, to Charter Oak, is likely secondary to the primary liability of Trumbull "because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible," specifically to suggest the dewatering plan and then negligently install, maintain and monitor the dewatering plan. *See Developers Surety*, 2013 WL 6504751, at *6-7. At this juncture of the litigation, Benesch's claim for common law indemnification is plausible on its face and Trumbull has fair notice of the claim and the grounds upon which it rests. For these reasons, Trumbull's Motion to Dismiss the indemnity claim is denied.

### B. Whether Benesch's Negligence Claim Violates the Gist of the Action Doctrine

Trumbull next argues that Benesch's negligence claim in Count I of the Third Party Complaint violates the gist of the action doctrine and should be dismissed. "[T]he gist of the action doctrine 'is designed to maintain the conceptual distinction between breach of contract claims and tort claims.'" *KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634

F. App'x 908, 910 (3d Cir. 2015) (quoting *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). The gist of the action doctrine bars tort claims:

> 1) arising solely from a contract between the parties; 2) where the duties allegedly breached were created and grounded in the contract itself; 3) where the liability stems from a contract; or 4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Id.* (quoting *eToll*, 811 A.2d at 19). Trumbull argues that any potential liability on its part stems from its performance of work set forth in the contract documents with the Railway including drawings and specifications for the Project. Trumbull notes that the work to be performed in a safe and workmanlike manner included dewatering of the Project site, including the bypass pumping system designed by Benesch.

In the Third Party Complaint, Benesch alleges that Trumbull negligently: (1) failed to implement and comply with Benesch's design of the project plan; (2) failed to place three 10-inch diversion pumps and one 10-inch diversion back-up pump as required by Benesch's design; (3) allowed a sandbag to block the intake hose of the pump; (4) failed to monitor the Project site and pumping operation on a continuous basis as it was specifically instructed to do; and (5) failed to formulate and implement a contingency plan for storm activity, as instructed by Benesch. *See* Third Party Compl., p. 7. Trumbull contends that the gist of the action is in contract because it contends that Benesch's allegations concerning Trumbull's purportedly negligent actions and omissions in the installation and operation of the bypass pumping system are allegations that Trumbull failed to perform its work on the Project pursuant to a contract with the Railway in a safe and workmanlike manner. Trumbull attaches to its motion the Norfolk-Trumbull Contract. *See* Mot., Ex. 2. According to Trumbull, because the gist of the

11

action is contract, it cannot be a joint tortfeasor or liable for a contribution claim in tort. Thus, Trumbull argues that Benesch's contribution claim must be dismissed.

For support, Trumbull cites *EQT Prod. Co. v. Terra Servs.*, LLC, 179 F.Supp.3d 486, 489 (W.D. Pa. 2016), a case in which EQT, a developer of a natural gas site, contracted with Trumbull to excavate a reserve water impoundment, or "pit" and prepare the subgrade. Another contractor, ECI, was hired to install the geotextile and geomembrane liner in the pit, and a third company was hired to design a system to extract, treat and return fluids to the pit. *Id.* Following completion and use of the pit, holes developed in the pit liner, resulting in natural gas fluids leaking and contaminating the ground surrounding the pit and waterways. *Id.* The plaintiff developer brought suit against the defendant designer alleging breach of contract, breach of warranty, and contractual and common law indemnification related to the environmental contamination, then the defendant designer joined Trumbull and ECI, the other two contractors, as third-party defendants. In the third party complaint, the designer alleged that the third-party defendants had contracted with the plaintiff developer to perform work in a workmanlike manner and, based on the third-party defendants' alleged failure to so perform, the designer sought contribution from the third-party defendants as joint tort-feasors of the alleged damages to the plaintiff developer. Because the plaintiff developer had not asserted any negligence claim against the designer in the original complaint, the court found the negligence claims by the designer against the third-party defendants mirrored the original breach of contract and warranty allegations asserted by the plaintiff developer against the designer in the original action and were barred because the gist of the action was contract.

In response, Benesch distinguishes *EQT* because in the instant case, the underlying claims by Charter Oak against Benesch in the original Complaint are solely negligence allegations and Benesch never entered into a contract with either Charter Oak or its subrogor Brayman. Unlike *EQT*, the allegations of negligence by Benesch against Trumbull mirror allegations of negligence by Charter Oak against Benesch and allege that Trumbull is a joint tortfeasor.

Benesch cites a more recent case than *EQT* as applicable precedent. In *Apple American Group, LLC v. GBC Design, Inc.*, 294 F.Supp.3d 414 (W.D. Pa. 2018), the owner of a restaurant franchise filed suit alleging breach of contract, negligence and unjust enrichment against a design company for moisture and drainage issues incurred following construction of a franchise location. The design company filed a third-party complaint for indemnification and contribution against the general contractor, construction supervisor and engineer, and those third-party defendants filed motions to dismiss. In its motion to dismiss, the general contractor argued, as Trumbull argues in this case, that *EQT* required dismissal of the claims for contribution and indemnification because they were barred by the gist of the action doctrine. The *Apple American* court held that *EQT* did not apply because neither the restaurant owner's complaint nor the third-party complaints alleged that the third-party defendants owed the plaintiffs any contractual obligations. *Apple American*, 294 F.Supp.3d at 424-425. The court further held that the gist of the action doctrine did not bar the third-party claims from proceeding forward to discovery and summary judgment because the doctrine "frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims" and the dispute regarding the parties' contractual relationships, or lack thereof, turned "on

issues of fact that are more properly decided at summary judgment." *Id.* at 424-426. Benesch has properly pled the contribution claim arising from allegations of Trumbull's negligence. Based on *Apple American*, it is not apparent that *EQT* applies in this case because neither the complaint nor the third-party complaint allege that Trumbull owes any contractual obligations to Charter Oak as Brayman's subrogor or Benesch. Trumbull's motion based on gist of the action is therefore denied and the third-party case will proceed to discovery.

       An appropriate Order follows.